UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DANNY T. BRADLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | No. 1:12-cv-01127-SEB-DKL |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Danny T. Bradley ("Bradley") requests judicial review of the decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration (the "Commissioner"),[1] denying Bradley's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") disability benefits. The Honorable Sarah Evans Barker, District Judge, designated this Magistrate Judge, under Fed. R. Civ. P. 72 and 28 U.S.C. § 636(b)(1), to issue a report and recommendation on the request. [Dkt. 22.] For the reasons set forth below, the undersigned recommends the Commissioner-s decision be **AFFIRMED**.

---

[1] Carolyn W. Colvin became the Acting Commissioner of the SSA on February 14, 2013, while this case was pending. Pursuant to Fed. R. Civ. P. 25(d), she is substituted for the former Commissioner Michael J. Astrue.

# I.   BACKGROUND

## A.  Procedural History

Bradley filed applications for Supplemental Security Income ("SSI") on September 9, 2010, alleging an onset of disability of January 1, 2003.  [Dkt. 13-2 at 12.] Bradley's application was denied initially on October 27, 2010, and upon reconsideration on December 22, 2010.  *Id.*  Bradley requested a hearing, which was held via videoconference on October 19, 2011, before Administrative Law Judge Angela Miranda ("ALJ").  Bradley appeared in Indianapolis, Indiana with counsel; the ALJ presided from Falls Church, Virginia. The ALJ denied Bradley' application on December 22, 2011.  [Dkt. 13-2 at 9.]  The Appeals Council denied Bradley' request for review of the ALJ's decision on July 24, 2012, making the ALJ's decision final for purposes of judicial review.  [Dkt. 13-2 at 2.]  Bradley filed his Complaint with this Court on August 15, 2012.  [Dkt. 1.]

## B.  Factual Background and Medical History

Bradley, who was 46 years old when he filed for disability, alleges physical impairments and anxiety resulting from multiple gunshot wounds that occurred in 2005.  Bradley has a ninth grade education and has no past relevant work.

In September of 2005, Bradley was shot four times:  in the right leg, on his left knee, in his right arm and in his lower back.  A bullet remains lodged near his spine. Bradley has not maintained steady employment since the shooting and suffers from chronic lower back pain.  Bradley testified that he can only stand for about 10 minutes; can walk for about a block and a half; can sit for only 25 to 30 minutes and can lift only

seven to eight pounds.  Bradley further testified that if he exceeded these restrictions he experiences numbness in his right arm and leg as well as severe back pain.

On January 20, 2010, Bradley was treated for a panic attack at Methodist Hospital.  He testified that he has nightmares about being shot and sometimes is afraid to leave the house.  There is no further objective medical evidence in the record supporting Bradley's diagnosis of anxiety and panic attacks.

On October 6, 2010, Bradley underwent a consultative examination with Dr. Paracha.  Bradley complained of worsening lower back pain radiating into his right hip and groin.  [Dkt. 13-7 at 3.]  Dr. Paracha noted that Bradley had no difficulty getting  on and off the examination table, could squat unassisted and had normal posture and gait. He further noted that Bradley had normal reflexes and range of motion in his cervical and lumbar spine, but did have some tenderness to palpitation in the lumbar spine.  *Id.* On December 17, 2010, state agency consultant Dr. Ruiz affirmed that opinion.  [Dkt. 13-7 at 26.]

On October 27, 2010, state agency psychological consultant Amy Johnson, Ph.D., examined Bradley and noted that he is not receiving any psychiatric treatment or psychotherapy services and is not taking any psychotropic drugs.  She further noted that Bradley had a good attention span, normal concentration, could follow verbal instructions and complete tasks.  Bradley reported to Dr. Johnson that anxiety did not impact his daily functioning.  [Dkt. 13-7 at 20.]  Dr. Johnson declined to make a diagnosis.  On December 17, 2010, state agency consultant Dr. Horton affirmed Dr. Johnson's opinion.  [Dkt. 13-7 at 25.]

On February 24, 2011, Bradley underwent a new patient physical exam with Dr. Akhavan Shahram.  Bradley complained of chronic back pain, but reported that he was not in pain that day.  Dr. Shahram noted that Bradley's lumbosacral spine exhibited no tenderness on palpitation and he was able to stand on his toes and heels.  Dr. Shahram diagnosed lumbago, an umbrella term for low back pain, and suggested physical therapy.  [Dkt. 13-7 at 79.]

On May 31, 2011, Bradley underwent an initial physical therapy evaluation at Wishard Hospital.  He complained of sharp pain in the middle of his back.  [Dkt. 13-7 at 31.]  The physical therapist noted that an "avoidance of movement" and "fear of pain and movement" contributed to his limited mobility and recommended therapeutic exercises.  *Id.*

On September 22, 2011, an X-ray of Bradley's spine showed no acute fracture or dislocation and no compression deformities in the lumbar spine.  [Dkt. 13-7 at 78.]  On September 26, 2011, a nurse practitioner at Citizens Health interpreted his X-ray as showing mild arthritis and referred Bradley to pain management.  [Dkt. 13-7 at 80.]  On October 7, 2011, the nurse practitioner diagnosed Bradley with Reflex Sympathetic Dystrophy and noted that he would be "unable to perform bending or lifting activities." [Dkt. 13-7 at 84.]

## II.   LEGAL STANDARDS

### A.   Standard for Proving Disability

To be eligible for SSI and DIB, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To evaluate a disability claim, an ALJ must use the following five-step inquiry:

Step One:      Is the claimant currently employed;

Step Two:      Does the claimant have a severe impairment or combination of impairments;

Step Three: Does the claimant's impairment meet or equal any impairment listed in the regulations as being so severe as to preclude substantial gainful activity;

Step Four:     Can the claimant perform his past relevant work; and

Step Five:     Is the claimant capable of performing any work in the national economy?

20 C.F.R. §§ 404.1520.  *See also Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  If the claimant meets that burden, then the SSA has the burden at Step Five to show that work exists in significant numbers in the national economy that the claimant can perform, given his age, education, work experience and functional capacity.  20 C.F.R. § 404.1560 (c)(2).

**B.  Standard for Judicial Review**

An ALJ=s decision will be upheld so long as the ALJ applied the correct legal standard, and substantial evidence supported the decision.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004).  Substantial evidence is "such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion." *Id.* (internal quotation omitted). This limited scope of judicial review follows the principle that Congress designated the Commissioner, not the courts, to make disability determinations:

> In reviewing the decision of the ALJ, we cannot engage in our own analysis of whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th 2004). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the court must defer to the Commissioner's resolution of this conflict. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *O-Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (citation omitted).

## III.    DISCUSSION

Bradley claims the ALJ committed various errors that require reversal of the Commissioner's decision. Specifically, Bradley asserts the ALJ erred by: (1) failing to give controlling weight to the opinions of Bradley's treating clinic; (2) failing to adequately consider whether Bradley's impairments met or equaled a Listing; (3)

improperly dismissing Bradley's testimony; and (4) failing to account for Bradley's mild limitations in concentration, persistence and pace at Step Five.

A. **<u>Opinion of Nurse Practitioner</u>**

Bradley first asserts the ALJ erroneously failed to give controlling weight to his treating physician's opinion that he is totally disabled.  Specifically, Bradley argues that the October 7, 2011, notation by a nurse practitioner that he was "unable to perform bending or lifting activities" represented the opinion of his treating physician that he is totally disabled and deserved controlling weight.  This argument fails for two reasons. The Social Security Administration's regulations provide that the opinion of a "treating source" will be given controlling weight if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and ... not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2).

However, a nurse-practitioner is not a "treating source" under the regulations. *See* 20 C.F.R. § 416.902 ("Treating source means [a claimant's] physician, psychologist, or other acceptable medical source ...."); *id.* § 416.913(d)(1) (listing nurse-practitioner among occupations that are not "acceptable medical sources").  *See e.g. Turner v. Astrue*, 390 F. App'x 581, 586 (7th Cir. 2010).  In addition, there is no evidence the nurse practitioner had an ongoing patient relationship with Bradley, or even examined him at all.   The only documents in the record with her signature pertain to the interpretation of Bradley's X-ray.  As a non-treating source, the opinion of the nurse practitioner is not entitled to controlling weight.  Therefore the Court finds the ALJ did

not err by assigning limited weight to the October 7, 2011, opinion of the nurse practitioner.2

### B.  <u>Listed Impairments Analysis</u>

Bradley next argues that the ALJ failed to summon a medical advisor to provide an opinion as to whether his combined impairments render him disabled.  He further argues that the ALJ should not have relied upon the opinions of the state agency physicians because they were dated October 27, 2010 and December 22, 2010.  The Court disagrees with both of Bradley's assertions.

State agency physicians are "highly qualified physicians" who also are experts in Social Security disability evaluation.  20 C.F.R. § 416.927(f)(2)(i).  Expanding on this regulation, the court in *Barnett v. Barnhart* determined that "[l]ongstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." 381 F.3d 664, 670 (7th Cir. 2004).  Therefore contrary to Bradley's assertion, the ALJ did not rely upon his own layperson's opinion as to whether Bradley met or medically equaled a Listing.  The ALJ's finding is supported by substantial evidence in the form of these expert opinions.

Though Bradley does not address the nurse practitioner's opinion diagnosing Reflex Sympathetic Dystrophy in this section of his brief, the Court notes that the ALJ's

---

2 As will be discussed further below, the Court also finds the nurse practitioner's opinion is inconsistent with the remaining medical documents in the record.

finding that this diagnosis and other evidence of back pain did not meet a Listing is supported by substantial evidence.  The ALJ pointed out there were no clinical records, objective test results or other indications that establish that Reflex Sympathetic Dystrophy ("RSD") is a medically determinable impairment consistent with Ruling 03-2p.  Social Security Ruling 03-2p specifies that RSD "constitutes a medically determinable impairment when it is documented by appropriate medical signs, symptoms, and laboratory findings," which may include the presence of persistent complaints of pain "when accompanied by one or more clinically documented signs such as swelling and changes in skin color, texture and temperature, among others." SSR 03-2p.  Here, there is no medical evidence that Bradley experienced documented signs of RDS outside of the single opinion of a nurse practitioner he may have seen on one occasion.

The ALJ also noted that there was no medical evidence to support a finding of disability under section 1.00 Musculoskeletal System.  She stated there was no evidence of "nerve root compression, spinal arachnoiditis or lumbar spinal stenosis" as required under Listing 1.04 and no evidence that Bradley's back pain resulted in "an inability to ambulate effectively" as defined by 1.00 (B)(2)(b).  Therefore the Court finds that the ALJ's determination that Bradley did not have an impairment or combination of impairments that equaled the requisite severity under the Listings is supported by substantial evidence, or in this case, a lack thereof.

### C. **Credibility of Bradley**

Bradley also asserts the ALJ's negative credibility determination based upon Bradley's subjective complaints of pain is contrary to SSR 96-7p.  The Court disagrees. In assessing a claimant's credibility when the allegedly disabling symptoms, such as pain, are not objectively verifiable, an ALJ must first determine whether those symptoms are supported by medical evidence.  *See* SSR 96–7p, 1996 WL 374186, at *2; *Arnold v. Barnhart,* 473 F.3d 816, 822 (7th Cir. 2007).  If not, SSR 96–7p requires the ALJ to "consider the entire case record and give specific reasons for the weight given to the individual's statements." *Simil v. Astrue,* 573 F.3d 503, 517 (7th Cir. 2009) (quoting SSR 96–7p). The ALJ "should look to a number of factors to determine credibility, such as the objective medical evidence, the claimant's daily activities, allegations of pain, aggravating factors, types of treatment received and medication taken, and 'functional limitations .' " *Simila,* 573 F.3d at 517 (quoting 20 C.F.R. § 404.1529(c) (2)-(4)).

Bradley argues the ALJ erred by not giving greater weight to his testimony "describing his total disability."  [Dkt. 17 at 11.]  But the ALJ cited ample record evidence supporting his conclusion that the objective evidence did not support Bradley's testimony.  For example, the ALJ notes that Bradley's treatment has been "routine and conservative in nature."  [Dkt. 13-2 at 17.]  She also notes that Bradley has not received any spinal injections and is not taking narcotic pain medication.  The ALJ then examined the relevant medical evidence and noted Bradley's physical examination results were not "particularly adverse."  *Id.*  The ALJ concluded that Bradley's treatment history combined with the results of his examinations "lessen the persuasiveness of the

claimant's subjective complaints." *Id.* Based upon this analysis by the ALJ, the Court finds that her determination to not fully credit Bradley's testimony of total disability is supported by substantial evidence.

### D. Step Five and RFC

Bradley's final argument for the reversal of the ALJ's decision challenges the hypothetical question the ALJ posed to the Vocational Expert ("VE"). Specifically, Bradley asserts that the hypothetical failed to account for Bradley's deficiencies in concentration, persistence and pace. He references the "unskilled work" limitation and the Seventh Circuit's stance that limiting claimants to "simple, repetitive tasks" is insufficient to account for limitations in concentration, persistence and pace. *See O'Connor–Spinner v. Astrue,* 627 F.3d 614 (7th Cir. 2010).

In *O'Connor–Spinner,* the Seventh Circuit explained that "*moderate* difficulties normally should be reflected in" the RFC and corresponding hypotheticals to the VE. *O'Connor–Spinner,* 627 F.3d at 620 (emphasis added). In that case, the ALJ determined that the claimant's depression caused moderate limitations in concentration, persistence and pace that should have been described to the VE. Here, there is no evidence of moderate limitation in those factors. At best, Bradley established only mild limitation which the ALJ accounted for in her hypothetical by noting that he had the "capacity to understand, remember and carry out simple, routine tasks." [Dkt. 13-2 at 44.] Therefore, the Court finds the ALJ"s hypothetical accurately reflected Bradley's RFC and does not require remand.

## IV.    <u>CONCLUSION</u>

The standard for disability claims under the Social Security Act is stringent.  The Act does not contemplate degrees of disability or allow for an award based on partial disability.  *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985).  Furthermore, the standard of review of the Commissioner's denial of benefits is narrow.  The Court reviews the record as a whole, but does not re-weigh the evidence or substitute its judgment for the ALJ's.  *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).  The Court must uphold a decision where, as here, it is supported by substantial evidence in the record.  As the Court cannot find a legal basis to overturn the ALJ's determination that Bradley does not qualify for disability benefits, the undersigned recommends the Commissioner's decision be **AFFIRMED**.

### Notice Regarding Objections

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto.  28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2).  A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made.  28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3).  Failure to file an objection might result in forfeiture of the right to *de novo* determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed.  *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n. 7 (7th Cir. 2009); *Kruger*

*v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**The parties should not expect extensions of time to file either objections or responses.  No replies will be allowed.**

**DONE this date**: 08/18/2013

Denise K. LaRue
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov